Our final case for argument this morning is Alvaro Elizondo Urzua v. Blanche. Alvaro Elizondo Urzua v. Blanche Your Honors, the BIA applied the wrong legal standards in this case, and under this court's precedent, those errors require remand. Here's the case in a nutshell. DHS charged the petitioner as deportable under a ground requiring that his CIMT be committed within five years of admission. The government concedes that a wave-through entry is an admission for purposes of the CIMT statute. What it argues is that the relevant admission here was in 2015 when the petitioner became an LPR, but the petitioner testified that he was waived through a port of entry in 1994 and submitted substantial evidence in support of that claim. As such, he argues it's his 1994 admission that's the relevant one for purposes of the grounds of deportability, and that his CIMT was not within five years of that date. Now, the BIA mistakenly applies matter of Quilantan to hold that the burden was on Mr. Elizondo Urzua to prove his wave-through entry by clearing convincing evidence. Now, it's true that Quilantan involved a non-citizen and put the burden on the non-citizen to prove their wave-through entry, but Quilantan didn't involve an LPR charged with deportability. Quilantan involved someone without lawful status who was applying for a green card for the first time. And 1229 AC3A unmistakably places the burden on the Department of Homeland Security to prove deportability, every element of deportability, by clear and convincing evidence. Now, rather than ask whether on the record as a whole DHS met its burden of proving deportability by clear and convincing evidence, the BIA shifts the burden to the petitioner and then focuses the rest of its inquiry on whether or not the petitioner did enough to meet his burden. And that was error. This court has repeatedly recognized that in cases involving lawful permanent residents, strong ties formed with the United States should not be severed lightly. That's why this nation's highest court has held that no deportation order may be entered unless it is found by clear and convincing evidence that every fact upon which the grounds of deportation alleged. If we agree with you that the BIA erred in placing the burden on the petitioner when it should have been on the government, then do we just then remand it, an open remand for the correct application of the burden? Yes, Your Honor. So you would remand it. However, we're asking the court to also correct the BIA's second chief error, which is that the petitioner couldn't even allege a mistake on his I-485, couldn't explain why the I-485 was inaccurate. That's the Lozada issue? Exactly, Judge. Without first complying fully with Lozada, which includes filing a state bar complaint against an attorney who won his petition, who won his application. The government has pointed to not a single case in which Lozada was applied in a context where someone prevailed. Lozada has been applied in the market. Part of the rationale for Lozada was, you know, everybody has an incentive when they get here to say, oh, you know, it's my lawyer's fault, right? There's a bit of a practical consideration there that if you're going to throw your lawyer under the bus, let's try to force you to, if it's possible for you to actually go get your lawyer's word, so that agency attorneys or agency decision makers and we as judges don't have to basically try to just figure out, because the only person that is here is the petitioner and not their lawyer. So there is one aspect of Lozada, which is you have to try to get, and it's part of the reason why you have to do a bar complaint. It's all to raise the stakes of throwing your lawyer under the bus. It seems like that same rationale has some resonance here in the sense of it's easy for him. And it's interesting because you all went out and you got these other people to say, hey, it's certainly possible to miss these. You've got to really be in the weeds and be really good immigration lawyers to understand this issue. But obviously the best evidence of what was going on with the attorney would be something from the attorney. I think it was himself in this and say what he was saying. And that's completely missing in this case. So it does seem, why is that not helpful to everybody to say if you want to do this sort of thing, you need to show up with your attorney statement or an explanation of why you can't get it. None of which he showed up with. He said he showed up with other attorneys that said, well, we think this may be just completely speculating as to that he may have missed it. I appreciate that, Judge, and I'd like to answer it by making two points. First of all, the burden is not on the petitioner. The Second Circuit explained in Punin that the burden of proof ultimately refers to the burden of persuasion. DHS carried the heavy burden in this case with these unique facts to prove, to persuade the BIA or the immigration judge that they should prevail. And so if anything, it was on them. There's a list of things that I could run down that they could have done in this case and didn't do. But I'd like to point out more importantly. You're talking about the Second Circuit case. I thought that it's a burden of production versus a burden of, I think you said burden of persuasion, which I'm not sure. Let me clarify, Your Honor. The Second Circuit says that the burden of proof is a burden of persuasion. That's on DHS. It doesn't shift. It rests on one party alone. Right. Then there's the burden of production, and that's the obligation of a party to come forward with evidence to support their claim. So if you're going to say, hey, DHS is wrong, it's not enough to just say DHS is wrong. You have to carry some burden of production. I want to address Your Honor's question about Lozada. There are three reasons why Lozada, under immigration law, did not apply in this case. First, I already covered, Lozada has only been applied in context when you're trying to disturb or undo or vacate the underlying decision. Right. The petitioner has no desire to undo his LPR status. But more importantly, Lozada requires prejudice, and it's not prejudice years later in some other tribunal or other proceeding. You have to be prejudiced. Harmless error is not enough. So this is the same arguments you made. So I think we're familiar with those. I guess what I'm asking is you're trying for a very, and I understand this, you're trying for a very technical, this is how Lozada has been applied. And what I'm trying to do is say if we just back out and ask what are the reasons why Lozada exists, you could call it Lozada, you could call it something else. But why wouldn't you, why wouldn't it make sense? In other words, why was it unreasonable for the agency in a circumstance like this to say we would prefer the best evidence or at least an explanation of why we can't get the best evidence over all of this speculation that you all provided? Because it looks like you're trying to get around. I mean I'm not saying you're trying, but it looks like we're providing, we're going to provide speculation from other attorneys as to what might have happened. Does anybody know? Can we get the answer from the actual attorney himself here? And, Your Honor, if the burden was on the petitioner in this case to persuade the court, then it might be fair to say, hey, you should have found out. Well, he does have a burden. He has a burden of production. And to say this is sort of a procedural, Lozada is a procedural sort of rule. It's basically saying what we will look at and what we won't look at, the agency, and then I guess we've adopted Lozada. And so if it's a procedural rule and he has the burden of production, then it would seem to apply here, I think, because you would say before we will accept a bunch of speculation from you as to what might have happened here from your immigration attorney experts and all that, we will first require you to either tell us what your attorney thought or, understandably, sometimes the attorney doesn't want to throw themselves under the bus. So Lozada, I think, has an option of saying – of you being able to provide an affidavit and say I asked the attorney, et cetera. So why – you understand what I'm saying? You keep saying Lozada doesn't apply, Lozada doesn't apply, and I understand that argument. What I'm saying is why shouldn't – if you look at policy reasons, why shouldn't something like Lozada apply? It seems to make sense to me that it should. Because, Your Honor, I don't think we want to incentivize people filing state bar complaints for errors that do not rise to the level of ineffective assistance of counsel. Well, that would – that would apply in Lozada too. I mean what we're trying to do is – in that context, it would apply too. What we do want to do is we want to have people not just speculate about that their attorney might have made a mistake or something like that. Right, but if I may, Your Honor, we didn't just have speculation in this case. We had petitioners' credible testimony about how he entered. We had him credibly testify that every single time he was asked that question, whether it was the attorney or the people that he worked at, an immigration law attorney, whether it was his father when he arrived in the country, every time he was asked how did you get here, he gave the same story. He never met Brian – The problem with that – I understand. The problem with all of that is, of course, the petitioner is always going to be incentivized in this sort of circumstance, say it was my attorney, not me. And so the whole reason is if we're trying to avoid a he said, she said sort of circumstance by – that's the whole point of Lozada. It seems like that would apply here too. So we can – we can – if he's going to say that and say his attorney did something wrong, then let's get the word from the attorney. I guess, Judge, in our view, he's not just saying it was my attorney. It wasn't me. He's providing – he's providing credible testimony. He provided the credible testimony of his father and his sister who testified that they were told 20 and 30 years ago the same story that the petitioner testified to, credibly, before the immigration judge in 2024. Now, if they had said petitioner told me this year when he was in removal proceedings that this is how he entered, that would be one thing. But the fact that they're saying that this was – information was relayed to him decades before it was ever material or helpful to the petitioner's defense against removal, decades before it was even beneficial to him in any way as a 13-year-old kid how he entered, whether it was a waive through admission or not a waive through admission. It wasn't beneficial to him. We had expert declarations establishing that DHS did not object to a single time in the proceedings below. We had expert declarations saying that, listen, these kilantan entries, as they're sometimes known for or called, these were missed all the time. People didn't ask the right questions. They asked – they said, did you come here without papers? And actually, if my client had been asked, right, in 2015, did you come here without papers, he would have said no. He got into a car. He was waived through the port of entry, and he landed in Los Angeles. He didn't have a visa. But you mean he would have said yes? He said if he was asked if he came here without papers. Sorry. He would have said yes. Okay. Thank you, Judge. And so if he had been asked, was he inspected or admitted, he wouldn't have said yes unless he had read the definition post-IRA IRA of 1101A13A, read kilantan, and was very familiar with immigration law. So the fact that he reviewed his I-485 and didn't catch that, that really wasn't for him to catch, and it does matter. Can I ask you why he didn't provide something from a lawyer in this case? Because this all seems, it just sounds speculative about, you know, this is all why this could happen, and it's his word against nothing from the lawyer. Why is there not something from his lawyer in this case? Your Honor, it wasn't his burden to do that. That is a fantastic question for why didn't DHS, why didn't DHS call the lawyer and have the lawyer come and testify? Why didn't DHS call the immigration officers that were allowing people through the border occasionally through wave-throughs in 1994? Why didn't DHS call the USCIS officer who interviewed the petitioner without his lawyer at his I-485 interview? So there's a list that we can continue, but I think asking the question as why didn't the petitioner, unfortunately, is tantamount to placing the burden back on him. And it's just not allowed. You're saying it is a burden of production. I mean, that makes sense, too, because otherwise forcing the government to complete, this is why the Second Circuit, if Quintana makes sense, which I'm not sure it makes sense, but if Quintana makes sense that the government bears the ultimate burden, there still has to be some sort of burden of production on the petitioner. Otherwise, the petitioner can, the government can say, you came in on this date, and the petitioner can be like, no. Well, then, Judge, respectfully, I actually, I think on this point we can agree. He had some burden of production, and the question that should have been asked was on this record. And then the question is what counts. This is my, the question is what counts as evidence, and Lozado says that certain things won't count unless you jump through some procedural hoops, and there's good reasons for that, and I guess your view is they just, those things shouldn't apply in this circumstance. My view is the BIA, and I see I'm totally out of time, but my view is that the BIA asked the wrong question. That is a clear error. That is a clear error, and it requires remand. I'll save the remainder of my time. Thank you. We ate up a chunk of your time, so I'll give you your three minutes back on rebuttal. Very kind. I appreciate that. Let's hear from the government. May it please the Court, Jennifer Bowman on behalf of the acting U.S. Attorney General. Respondent takes the position that the petition for review is subject to denial in its entirety, as argued in the answering brief. In this case, DHS, there's no dispute that DHS met its burden to show that petitioner was convicted of a crime that constituted a crime involving moral turpitude. DHS additionally showed that this crime was committed within five years of his lawful admission, and that on his application for his lawful admission, he had indicated that he had no prior lawful admissions. Let me get right to the chase in terms of the burden of proof. If the analysis was done by placing the burden of proof on the petitioner when, in fact, it should be on the government, doesn't that warrant a remand for reanalysis with the correct allocation of the burden? Your Honor, Respondent takes the position that the burden was not improperly placed on petitioner, that rather, petitioner had a burden of production here once DHS met its initial burden, and petitioner does not dispute. Let me ask you this. If we disagree with you and we think that the BIA put the burden of proof on the petitioner, then what do we do? You had to assume that since the BIA said that they put the burden of proof on the petitioner, I would hope that in preparation for today's argument, that you would have assumed that you would be asked that question. Assume for a second that if the burden of proof was on petitioner, what do we do? Your Honor, I do understand your question. Respondent does not agree that the BIA put the burden of proof to show removability, that he was not removable on petitioner, but rather, once DHS met a certain threshold to show removability, petitioner did not come forward with enough to show his manner and place of entry. If we disagree with you and we're bound by our current precedent that the burden shifts in terms of proving admission to the non-citizen only in illegal reentry cases, we're bound by that precedent, then do we remand for reanalysis in that instance? I know you're not conceding that the burden of proof was wrongfully allocated. But, Your Honor, with all due respect, that precedent interpreted a prior version of the statute. The statute has since been amended, and now any charge of – Are you talking about Iran, the Iran case? It was my understanding that Judge Wynn was speaking about Iran. That's what I was saying, and I know you're disputing that. But if we disagree with you, that's a remand, isn't it? Yes, Your Honor. If you disagree with Respondent's position, I don't see how Respondent can prevail here. Well, let me ask you – so you say – you were saying that the Iran panel analyzed the prior version, which it did. It analyzed the 1952 version, and we have the 1996 version. But my understanding is that they don't really materially differ at all. They do, Your Honor, because in the prior version, all charges of removability were under Section 5. Here, any charges that are of inadmissibility under 8 U.S.C. 1182 is under a completely different section that 8 U.S.C. 1361 would never apply to because 1361 only applies in Section 4. Okay, so let me ask you – because I don't want to run – so I understand your arguments from your briefing that it was dicta in Iran, and I understand your arguments today. Let's say that as much as my heart may be with you, I cannot agree with you on any of that. Yes, Your Honor. What are you – and then make sure I understand for a second that I think your argument was – the petitioner and their counsel concedes that the petitioner has a burden, but their argument – and I think that's consistent with our case law – is that they have a burden of production, but they never have the burden of proof. In other words, they can't just sit there if the government says you entered on X date and have some evidence. They can't just say no and then win because they denied it. They have to say no and provide something, and then the government has the burden. Do you agree that that is the framework? Or as I understood it, your argument was that they bore the burden of proof as to some small piece. What is your position on that? No, Your Honor. Our position aligns with that. The DHS ultimately bears the burden to show removability, but that petitioner bears the burden to show manner and place of entry. Okay, so that's helpful to me. So maybe your position now, you and the petitioner would agree as to the standard but disagree as to how – disagree as to who wins here under that standard. The problem I guess I'm having is I just don't see – the BIA said that they put the burden of proof on the petitioner, and I think you're interpreting that as, oh, no, the BIA meant it was just putting the burden of production on the petitioner. The BIA expressly says to show manner of entry, not to show – the board decision doesn't say that petitioner bore the burden to show he was not removable. Well, that's why I was asking you the question earlier about he has the burden of production to show manner of entry perhaps if he's going to take a position that's different than the government's, but he doesn't have the burden of proof to show manner of entry, or is your view that he has the burden of proof to show manner of entry? Your Honor, our position is that he would need to prove under 1361 his manner of entry. And why is that not completely foreclosed by Iran? Because Iran was one dicta and interpreted a prior version of the statute such that Iran is no longer binding precedent or wouldn't be binding precedent with this statute. You're going to run out of time, so let me move you to Lozada. Yes, Your Honor. And my questions are really going to assume that we disagree with you on the 1361 issue, right? Because in the 1361 deportation proceeding, it's really about proving lawful presence on which the petitioner would have the burden. Here, he's lawfully in the United States after having adjusted status. And if we think that it's on the government to prove admission, then the question is, we send it back. Should we then address the Lozada issue? Because otherwise, the BIA is going to do the same thing, presumably. So I know you heard Judge van Dyck's series of questions to your opposing counsel on why Lozada should apply, and I want to make sure that I give the government an opportunity to address why you think Lozada is applicable in this case. Because to me, Lozada is grounded in due process. Petitioner has to show that counsel's ineffectiveness rendered the proceeding so fundamentally unfair that relief is warranted. In that context, we said that he has to comply with the requirements of Lozada. In this case, I don't see him saying that counsel was incompetent or ineffective in any way. He didn't say that the proceedings were fundamentally unfair. He's just trying to rebut the government's position on the admission date. So why, under those circumstances, assuming the burden rests on the government, should we apply the framework of Lozada? Your Honor, Respondent would take the position that Judge van Dyck was making, that as the board's decision says, there has to be, if the board were to accept petitioner's position that Lozada did not apply, then it would be susceptible to just having to accept any time a petitioner says that their attorney erred. Here's where the allocation of the burden should make a difference, right? If the burden is on the petitioner, and he's saying my counsel was ineffective such that the proceedings are rendered fundamentally unfair, there's some logic to requiring the requirements of Lozada. Here, the government has the burden of proving admission. He's trying to rebut that with his own testimony that it was a wave through admission. He's saying that Quinlinton errors are pretty common. He's not saying counsel's ineffective. I don't know why the burden should shift to him to do anything. If the government wanted to, couldn't it reach out to counsel and have counsel provide declaration or come in to provide testimony? I'm not saying that the government could not have reached out to counsel. However, petitioner does not dispute that the agency or the DHS was reasonable in relying on his adjustment application form. The only position here is that where he then says, no, no, that's an error. They shouldn't be allowed to rely on the application form. The respondent's position is that he needs to do something to say, well, it would be completely reasonable for you to rely on that form. It's not really reasonable here. And in doing so, that would be allowing his attorney an attempt and just an opportunity to respond as to what happened. Why does that go to wait? So the government is saying, OK, your admission date is on X date. And he basically provided testimony saying, no, it was years earlier. And here are the circumstances under which I was admitted. And by the way, the document is just wrong because counsel really don't think about this issue. And so, you know, I think the IJ could say, well, you know, you're essentially asserting, boldly asserting that counsel made this error, but you didn't provide any corroboration. So I'm not going to put a lot of weight by that. So why is it that he has to go through the entire Lozada requirements for that attempt to rebut the government's admission date to have any relevance? Because, Your Honor, I think it's for the reason that the board stated that if we don't have some threshold here that must be met, then the agency would be susceptible to any, any respondent, any alien who's being subject to removal proceedings, disputing prior representations that they made under oath on applications to the agency that the agency would otherwise be reasonable, would reasonably rely upon. And why do you think that's not a shifting of the burden of proof? Because at the end of the day, Petitioner still has the burden to show his manner of entry, which I do understand, Your Honor, does not necessarily agree with. Right, so assuming we don't agree with it, why isn't it a shifting of the burden of proof? Because, again, Your Honor, respondent takes the position that Petitioner had the burden to show his manner of entry. So I think your answer is, so I think your answer, counsel, is you don't have an answer if you have the burden. Go back and listen to my questioning to your opposing counsel, and I gave you an answer as to, and it has to do with production. But I don't think it's helpful to continue down that. Let me ask you, this is important. I'm trying to figure out why we would get to Lozado. If you assume for a second, I know you don't agree with us, but if you assume for a second that the BIA erred here and put the burden improperly under our precedent, why we would get to Lozado? Because if we told the BIA, no, our precedent says you have to put the burden squarely on the government, then, because this is what Judge Winn just said, then you would, the agency might say, okay, well, now if you want to rebut, Lozado doesn't apply because of the fact that the burden is on the government. Lozado only makes sense if the, I'm not sure if I agree with that. I'm just trying to figure out why we would reach, do you think it was necessary for us to reach the Lozado question if we were going to remand on the first issue? The respondent does not take a position that the court needs to reach Lozado if you're remanding on the first issue. The problem with, okay, so the problem would be that in theory, the BIA might just do the same thing again, but we don't know that, I guess, right? Because we don't know what the BIA will do if they put the burden on the right person. Let me ask you, if it's okay, I want to ask one other question that's kind of related to the focus order, which is – I don't know how to say the name of this case. Maybe like Quilantin and – so Iran seems clearly wrong. From my perspective, Quilantin seems wrong also. The difference between those two is one of them is our precedent. One of them is your precedent. It's the BIA's precedent. So what is your position – now, we deferred to Quilantin in our case law, but that was when we were supposed to defer. And so what is your view on is Quilantin rightly decided? Does that need to be looked at again? What about our case law that relied on Quilantin? Your Honor, respondent understands that under Loper-Bright, this court is no longer obligated to defer to the board's interpretation of the statute. But respondent, to the extent the court finds that its own case law precedent interpreted the sound that the statute was clear and didn't necessarily defer to Quilantin. Well, what if it's unclear what we did? There is also – I think Loper-Bright and other cases have said that if we had something that was based on Chevron deference, we don't necessarily revisit those things. So that's why I'm asking what the – it seems like the agency would have to revisit Quilantin if it wants to. Your Respondent, it's unclear whether under this court's precedent, the agency could necessarily revisit interpreting the statute as far as admission. Your view is we're in a bit of a standoff here because we think we defer to you and you're deferring to us. Okay. Do you have anything else to say about that that would be helpful to me? Only that this court – in Hingsum, a case from 2010, this court deemed the statute to be clear and not necessarily requiring deference. So I don't know to what extent – Only the Supreme Court can get us out of this bind we're in and overrule Quilantin in our cases. Yes, Your – I don't know, Your Honor. Okay. All right. You're over time, but let me see if Judge Gould has any questions for the government. No, I have no questions. Thank you, Counsel. Thank you. I think I promised to give you a little bit of your time back. Thank you, Your Honors. I'd like to briefly address one part of Lozada that I didn't get to address earlier. This court's – under this court's precedent, Lozada doesn't apply to an error on a petition or application submitted at a time when the petitioner's removal proceedings didn't exist. This court held in Ballum Shook that counsel's ineffective assistance does not relate to the substance of an ongoing hearing where no proceeding had begun at the time of the – at the time that the alleged misconduct took place. This is why we so strongly have argued that under the law, multiple ways, whether it be the non-application to harmless error, whether it be the non-application outside of a motion to reopen or direct appeal context, or whether it be under this court's precedent in Ballum Shook, the rule that the petitioner had before him was that it was not appropriate to apply – to file a state bar complaint. If this court were to change that evidentiary standard, then the petitioner would – has argued that he would need an opportunity to actually properly have notice of that new rule and respond. I want to touch briefly – Can you address real quickly this – it's not clear to me how this will play out if we were to send it back and say no BIA. You have to put the burden on the government. It's not clear how this all – what is your thoughts on that? My thoughts on that is that while technically the court could remand just based on the burden shift alone, we would find ourselves back before this court because the – because the BIA has already spoken on what it feels about compliance with LAZADA and that that would be another legal error. But it spoke about that in the context of a case where it put the burden on the petitioner, right? So we don't know what the BIA would do if it – if we corrected the first step? I understand you're saying it could do it again, but I'm not sure if we know if it would do that again. We would ask – my 21 years representing folks before the BIA tells me that we would ask this court to make – to issue a ruling on the LAZADA claim so that we can go back. So it would be basically remanding and making sure that the BIA and IJ know that the burden falls on DHS, that that includes where DHS's theory of – So you want us to address that? Yes, Your Honor. Can I ask you about the question about – from the focus order, which is – Yes. What is the – did we rely on – I'm sorry. I can't say the names. Kill on time. Yeah. Can we – did we rely on that in the Ninth Circuit precedent in a Loperbright – I mean a Chevron type thing or did we reach it independently or was it some sort of mix? Because that has to do with – the agency in theory could reconsider the case I can't pronounce, but you – but they're not going to do that or they might feel bound by us that they can't do that. Your Honor, we believe that Saldivar and Kill on Time both continue to control after Loperbright. The court in Saldivar actually did exactly what the Supreme Court instructed courts to do in Loperbright, to undertake the judicial function of interpreting statutes and to consider guidance from agencies as just that, guidance with the power to persuade but not to control. Saldivar was very clear that it was relying actually on its own Ninth Circuit precedent in Hingson. So if that's the case – and I think you could be right about that. Yes. Then the only solution to this would be to go en banc by the Ninth Circuit. If you disagree – if somebody disagreed, the only solution – this panel can't do anything. It would either have to go en banc by the Ninth Circuit or the Supreme Court would have to weigh in. That's right, Your Honor, because this court said after Loperbright and Lopez-Garland that a three-judge panel could not overrule precedent unless there was Loperbright intervening. I'm happy to address 1361 briefly, Your Honors. The government's – You're actually over time, Counsel. Okay. Well then, thank you, Judge. But we appreciate both government counsel and you for participating in a lively argument this morning that's been very helpful to the court. The matter is submitted and we are in recess. Judge Gould, did you have anything final before I call an end to this case submitted in recess for the day? I have no comment or question. Thank you very much. Then the matter is submitted and we're in recess until 9 a.m. tomorrow morning. All rise.
judges: GOULD, NGUYEN, VANDYKE